885 F.Supp. 197 (1995)
IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER AUTHORIZING THE USE OF A CELLULAR TELEPHONE DIGITAL ANALYZER
No. 95-138 M.
United States District Court, C.D. California.
April 19, 1995.

*198 ORDER RE USE OF DIGITAL ANALYZER
EDWARDS, United States Magistrate Judge.
On April 3, 1995, the United States of America ("applicant") applied for an order to permit agents of the Orange County Regional Narcotics Suppression Program ("RNSP") to use a cellular telephone digital analyzer. The application was denied without prejudice by order filed April 6, 1995, because the disclosure was insufficient for the court to determine the precise nature of a digital analyzer and how it would be used. Specifically, it could not be determined who would operate the analyzer, under what circumstances, and how its use would be limited to detecting cellular phones used by the subjects of the RNSP investigation. On April 11, 1995, applicant supplemented its ex parte application with a declaration of an RNSP investigator. Based on all of the files and materials of record, the court finds and orders as follows:

1. Facts.

A. A cellular telephone digital analyzer ("digital analyzer") is a portable device that *199 can detect signals emitted by a cellular telephone.
B. The digital analyzer can detect the electronic serial number ("ESN") assigned to a particular cellular telephone, the telephone number of the cellular telephone itself, and the telephone numbers called by the cellular telephone. (The cellular telephone company also detects the ESN, the telephone number of the cellular telephone, and the telephone number being called  dialed or pulsed  from the cellular telephone. The telephone company uses this information both to bill the subscriber of the cellular telephone based on its usage and also to connect the cellular telephone to the telephone number called.)
C. A digital analyzer can be programmed to intercept communications, i.e., the conversations over the cellular telephone; however, applicant does not seek authorization to use the digital analyzer for this purpose and acknowledges that it would not be authorized to do so under the order sought herein.
D. A digital analyzer must be within close proximity of the cellular telephone whose use is being analyzed. The instructions on the particular device described in the moving papers instructs the user to be within 3 to 10 feet of the cellular telephone. The affiant investigator of RNSP believes, however, that the digital analyzer could be effective at a greater distance (but no specific estimation of its maximum distance is made).
E. Applicant cannot specifically identify the cellular phones whose signals it will seek to analyze. Instead, applicant seeks to analyze signals emitting from any cellular phone used by any one of five named subjects of a criminal investigation. (The Application also suggests the need to use the digital analyzer to identify cellular phones used by "others known and unknown who are involved in the [crimes being investigated]"; however, the proposed order lodged by applicant does not seek authorization to use the digital analyzer to analyze calls by anyone except the named subjects.)
F. The application herein was made by an Assistant United States Attorney, an "attorney for the Government" as defined in Rule 54(c) of the Federal Rules of Criminal Procedure. The application identifies the attorney for the government and identifies the law enforcement agency conducting the investigation (RNSP). It also certifies that the information likely to be obtained using the digital analyzer is relevant to an ongoing criminal investigation being conducted by that agency.

2. A court order is not required to use a digital analyzer.

The application purports to apply for an order under 18 U.S.C. § 3122 and 28 U.S.C. § 1651. Applicant contends, however, that no court order is required to use the digital analyzer. The court agrees. Numbers dialed by a telephone are not the subject of a reasonable expectation of privacy, and their interception does not violate the 4th Amendment. Smith v. Maryland, 442 U.S. 735, 742-745, 99 S.Ct. 2577, 2581-83, 61 L.Ed.2d 220, 227-230 (1979). No logical distinction is seen between telephone numbers called and a party's own telephone number (or ESN number), all of which are regularly voluntarily exposed and known to others. Id.
There is no apparent general prohibition against the use of such devices as digital analyzers, as long as they are not used to intercept the contents of any communication. Thus, using a digital analyzer to detect only the ESN, the cellular telephone's own number, and the numbers being called by the cellular telephone would not violate the proscriptions of 18 U.S.C. § 2510 et seq., which defines "contents" of a communication as including "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). That this definition is not intended to cover digital analyzers used as proposed by applicant is further indicated by the specific exclusion of such devices as pen registers and trap and trace devices from the proscriptions of 18 U.S.C. § 2511. See § 2511(2)(h)(i).
Nor do the prohibitions against the use of pen registers and trap and trace devices (in 18 U.S.C. § 3121) without court order appear to apply to the proposed use of digital analyzers to detect non-communicative signals. The statutory definition of a *200 pen register limits it to a device "which records or decodes electronic or other impulses which identify the numbers dialed or otherwise transmitted on the telephone line to which such device is attached...." 18 U.S.C. § 3127(3). According to the declaration accompanying the application herein, the investigators will use the digital analyzers in mobile situations. Specifically, they will conduct surveillance of the subjects of the investigation, and when they observe a subject using a cellular telephone, they will turn on the digital analyzer. The analyzer will then display the ESN, the telephone number of the cellular telephone being used, and the telephone number of the party being called on the cellular telephone. Also, as previously noted, the digital analyzer must be in close proximity to the user of the cellular telephone. Plainly, it is not intended to be, and could not be, attached to the cellular telephone. Nor would it be attached to any telephone line.
The statutory definition of a "trap and trace device" does not include the limitation in the definition of a pen register described above, limiting the devices to those that are attached to a telephone line. See 18 U.S.C. § 3127(4). Nonetheless, it appears from the construction of related sections of the statutes governing trap and trace devices that they include only devices that are attached to a telephone line. Specifically, 18 U.S.C. § 3123(b) requires that an order for use of both pen registers and trap and trace devices include "the number and, if known, physical location of the telephone line to which the pen register or trap and trace device is to be attached...."
This limitation on the proscription against pen registers and trap and trace devices to prohibit only devices that are "attached" to a telephone line cannot be assumed to be inadvertent. In other statutes relating to interceptions of telephone communications, Congress encompassed, generally, any types of interceptions of wire, oral, or electronic communicationsregardless of whether the intercepting device was "attached" to a telephone line. See, e.g., 18 U.S.C. § 2511. That Congress did not impose equally comprehensive restrictions on lesser interceptions that do not raise 4th Amendment issues, such as those made with pen registers and trap and trace devices, is neither surprising nor inconsistent.
In any event, it must be remembered that the prohibition against the use of pen registers and trap and trace devices without court order is found in a criminal statute. See 18 U.S.C. § 3121(d). Under well-settled principles, the statute should be strictly construed, and any ambiguity in its scope must be construed narrowly.
For all of the foregoing reasons, it is concluded that applicant's contention that no court order is required to use a cellular telephone digital analyzer is correct.

3. To the extent that a court-ordered procedure can be fashioned, the procedure for which approval is sought herein is insufficient.

Understandably, notwithstanding applicant's contention that no court order is required, an order is sought herein "out of an abundance of caution." If the statutes governing the use of pen registers and trap and trace devices, 18 U.S.C. § 3121-3127, are construed broadly enough to encompass digital analyzers which are used only to detect ESNs, telephone numbers of targeted cellular telephones, and telephone numbers called by the targeted telephones, then an appropriate order might be fashioned analogous to the order prescribed in 18 U.S.C. § 3123(b). The proposed order sought herein, however, cannot be granted. It reads, in pertinent part:
IT IS ORDERED, pursuant to title 18, United States Code, Section 3123, and Title 28, United States code, Section 1651, that, for a period of sixty (60) days from the date of this order, agents of the Orange County Regional Narcotics Suppression Program (RNSP) may use a cellular telephone digital analyzer to determine the ESN and the telephone numbers assigned to the subject telephones, and to register numbers dialed or pulsed from the telephones.
IT IS FURTHER ORDERED that Pacific Bell Telephone, Air Touch Cellular, L.A. Cellular, General Telephone and AT *201 & T companies shall supply subscriber names and addresses (including credit information provided for said subscriber) for persons called by the subject telephones, whether listed or unlisted, upon oral or written demand of agents of the RNSP, ...
As contemplated for use by applicant, the digital analyzer takes on some of the characteristics of a pen register and some of the characteristics of a trap and trace device. Analogous to a pen register, it displays the phone numbers dialed by the cellular telephone being analyzed. On the other hand, analogous to a trap and trace device, it displays the number (and the ESN) of the cellular phone that is making the call. In other words, it operates as a pen register would operate if it were attached directly to the cellular phone. It also operates as a trap and trace device would operate if it were attached to the cellular telephone company's receiver/transmitter facility that receives the call from the cellular phone and re-transmits it to the telephone being called.
As set forth above, applicant has made certifications sufficient to satisfy the requirements of 18 U.S.C. § 3122 to justify the issuance of a pen register or trap and trace device. Any order issuing to authorize use of a digital analyzer, however, must be as analogous as possible to that prescribed by 18 U.S.C. § 3123(b)(1)(A)-(D). § 3123(b)(1)(A) may be satisfied simply by stating the name of each subject of the investigation identified in the application. §§ 3123(b)(1)(B) and (D) may be satisfied by including in the order the identities of the subjects of the investigation and a statement of the offense to which the information likely to be obtained using the digital analyzer relates.
§ 3123(b)(1)(C), however, has terms for which no directly analogous counterpart can be drafted for an order of the type sought herein. § 3123(b)(1)(c) requires that the order state:
The number and, if known, physical location of the telephone line to which the pen register or trap and trace device is to be attached and, in the case of a trap and trace device, the geographic limits of the trap and trace order ...
Because the digital analyzer has some of the characteristics of a pen register, its use (and thus its physical location and the physical location of the cellular phone targeted) must be limited to this judicial district. This restriction will also satisfy the requirement that the geographic limits of use of the analyzer be set forth (since the analyzer acts, in part, like a trap and trace device).
Since the telephone number of any cellular telephone being analyzed will not be known at the time an order is issued, it would be impossible to comply literally with the requirements of § 3123(b)(1)(C). The legislative history of this section is silent as to the reason for including in an order the specific telephone number of the telephone line to which a pen register or trap and trace device is to be attached. It is apparent, however, that Congress had two concerns that the statute was intended to address: (1) the abusive interception of communications and (2) the accountability of law enforcement officers using advanced technology that might threaten privacy rights.
As noted above, the digital analyzer sought to be used herein would not be permitted to be used to intercept the contents of interceptions of phone numbers and other signals that do not include the content of communications were to be accounted for on a telephone-number-by-telephone-number basis. The order sought, as set forth above, would not insure sufficient accountability. For example, depending upon the effective range of the digital analyzer, telephone numbers and calls made by others than the subjects of the investigation could be inadvertently intercepted. Also, it may be that individual subjects of the investigation use a plurality of cellular telephones having different numbers. With the present order sought by applicant, all such telephones could be analyzed without any record being produced.
It appears that Congress determined that adequate accountability for the use of pen registers and trap and trace devices could be achieved (1) through the use of court orders that identified particular telephones and the investigative agency and (2) through periodic *202 reports to Congress stating the numbers of such orders. 18 U.S.C. §§ 3123(b), 3126. Since the court orders sought herein cannot contain individual telephone numbers to be analyzed, any proper order should contain, instead, a requirement that the investigative agency maintain a time log identifying each target cellular telephone analyzed (by ESN and telephone number), together with all intercepted telephone numbers dialed or pulsed from each such telephone.
The proposed order above also seeks to require various telephone companies to provide subscriber information for all persons called using the cellular telephones being analyzed. Such an order would not appear to provide sufficient accountability for the gathering of such subscriber information. 18 U.S.C. §§ 2703(c) and (d), for example, contemplate that a determination will be made in advance that there are specific and articulable facts showing that a particular subscriber's records will be material to an ongoing criminal investigation. The application does provide specific and articulable facts sufficient to justify disclosure of subscribers who are the named subjects of the investigation. As to subscribers whose telephone numbers are dialed from the target cellular telephones, however, additional applications for orders to disclose subscriber information will be required after those numbers are identified using the digital analyzer. Such applications must, of course, independently comply with the statutory requirements for issuance of orders of disclosure.
For the foregoing reasons, the application for order authorizing use of a digital analyzer is DENIED without prejudice to applicant's filing a new application for an order consistent with the foregoing.
The application and other papers filed and lodged herein, except this order, are ordered sealed for 90 days.